IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERRILYNN RINGER, | ) | CASE NO.  5:19-cv-01924 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Jerrilynn Ringer ("Plaintiff" or "Ringer") seeks judicial review of the final
decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")
denying her applications for social security disability benefits.  Doc. 1.  This Court has
jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate
Judge pursuant to the consent of the parties. Doc. 12.   Plaintiff seeks a remand pursuant to both
sentence four and sentence six of 42 U.S.C. § 405(g).  For the reasons explained herein, the
Court **AFFIRMS** the Commissioner's decision.

## I.  Procedural History

Ringer filed applications for Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI") in 2012 and 2016.  The 2016 applications are at issue in this appeal.  To
provide context, the procedural history relative to the 2012 applications is also summarized
below.

2012 applications for disability benefits

In 2012, Ringer filed applications for DIB and SSI, alleging disability as of July 3, 2011.
Tr. 277.  Following a hearing on those applications, on March 19, 2015, an administrative law

1

judge issued an unfavorable decision, finding Ringer not disabled from July 3, 2011, through the date of the decision. Tr. 274-298.  On January 29, 2016, the Appeals Council denied review.  Tr. 299-305.  Thereafter, on March 28, 2016, Ringer filed an appeal with the United States District Court for the Northern District of Ohio, Case No. 5:16-cv-00764.  Tr. 23, 306-331, 332-341, 342.  On June 30, 2017, the district court affirmed the Commissioner's decision.  Tr. 23, 332-341, 342.

   2016 applications for disability benefits

   On February 4, 2016, Ringer filed new applications for DIB and SSI, alleging disability as of March 20, 2015, i.e., the day after the prior March 19, 2015, decision.  Tr. 21, 345.  Ringer alleged disability due to nerve damage defined as RSD (reflex sympathetic dystrophy, also referred to as complex regional pain syndrome), severe anxiety, and depression.  Tr. 345, 349, 369-370, 395, 410.  Ringer's applications were denied initially (Tr. 395-408) and upon reconsideration by the state agency (Tr. 410-421).   Thereafter, she requested an administrative hearing.  Tr. 422-426.  On May 24, 2018, an administrative hearing was conducted by an administrative law judge (hereinafter "ALJ").  Tr. 58-99.

   On August 9, 2018, the ALJ issued a decision denying benefits, finding that Ringer had not been under a disability within the meaning of the Social Security Act from March 20, 2015, the alleged onset date, through the date of the decision.  Tr. 18-57.  Ringer requested review by the Appeals Council.  Tr. 482.  As part of her request, Ringer submitted evidence for the Appeals Council's review.  Tr. 2.  On June 25, 2019, the Appeals Council denied Ringer's request for review, making the ALJ's August 9, 2018, decision the final decision of the Commissioner.  Tr. 1-7.  In reaching its determination, the Appeals Council found that the evidence submitted for its

review was not new; did not show a reasonable probability that it would change the outcome of the decision; and/or it did not relate to the period at issue.  Tr. 2.

## II. Evidence

### A.     Personal, vocational and educational evidence

Ringer was born in 1985 and she was 29 years old on the alleged disability onset date. Tr. 49, 65.  At the time of the May 24, 2018, hearing, Ringer was living with her grandparents. Tr. 66.  She had lived with them since she was 11 years old.  Tr. 66.  She has a high school education.  Tr. 49, 67.  Her past work includes work as a hostess and bakery clerk.  Tr. 48-49, 67-68, 597.

### B.     Medical evidence

In January 2009 Ringer had surgery to remove a Morton's neuroma from her left foot.[1] Tr. 204, 702.  Ringer continued to have problems with her foot following her surgery and on October 11, 2011, she saw Dr. Gamaliel Batalla, M.D., at the Affinity Medical Center Pain Center.  Tr. 702-703.  During that visit, Ringer complained of "sharp, achy, burning, tingling, throbbing, shooting, gnawing, tender, unbearable, nagging type of pain on her left foot that would occasionally shoot all the way up to her fingers."  Tr. 702.  Ringer indicated that nothing seemed to help with her pain and she occasionally noticed color changes and swelling in her right foot.  Tr. 702.  She had received treatment at the Aultman Pain Clinic, which included a lumbar sympathetic block that did not provide her with any significant relief.  Tr. 702.  She was

---

[1] "Morton's neuroma is a painful condition that affects the ball of your foot, most commonly the area between your third and fourth toes. Morton's neuroma may feel as if you are standing on a pebble in your shoe or on a fold in your sock.  Morton's neuroma involves a thickening of the tissue around one of the nerves leading to your toes. This can cause a sharp, burning pain in the ball of your foot. Your toes also may sting, burn or feel numb."  *Morton's Neuroma*, MAYOCLINIC.ORG, https://www.mayoclinic.org/diseases-conditions/mortons-neuroma/symptoms-causes/syc-20351935 (last visited 8/12/2020).

offered a spinal cord stimulator but was not interested.  Tr. 702.  Ringer had lost her insurance and had limited resources to pay for medication.  Tr. 702.  On physical examination, Dr. Batalla observed swelling at the interdigital dorsal aspect of the left foot between the first and second toe with no clubbing or cyanosis.  Tr. 703.  Ringer walked with a normal gait and had full range of motion in both feet; motor strength was 5/5 in both lower extremities; deep tendon reflexes were symmetrical; and a sensory exam showed allodynia[2] at the dorsal aspect of the left foot.  Tr. 703.  Dr. Batalla's impression was complex regional pain syndrome type 2 of the left lower extremity.  Tr. 703.  Dr. Batalla explained he could only prescribe non-narcotic treatment alternatives; he advised her to continue taking Zanaflex and Celebrex; he started her on Topamax; he provided her with a prescription for a garment that she should use on her foot; and he recommended that she keep an open mind regarding the spinal cord stimulator.  Tr. 703.  Dr. Batalla noted that Ringer indicated the stimulator was not an option because she was without insurance.  Tr. 703.  Ringer relayed an interest in acupuncture.  Tr. 703.  Dr. Batalla did not see any issues with Ringer pursuing acupuncture if she wanted to.  Tr. 703.

Ringer argues that she was found to be disabled by the Social Security Administration in February 2013 by Dr. Michael Delphia, M.D.  Doc. 16, pp. 4-5; Doc. 16-3, pp. 1-11.  She attaches a copy of Dr. Delphia's determination to her brief (Doc. 16-3, pp. 1-11), which relates to her 2012 application, and argues that it is not on the exhibit list attached to the ALJ's decision.  Doc. 16, pp. 2, 4-5.  She recognizes that, following Dr. Delphia's determination, her claim went to Quality Control and the determination that she was disabled was reversed on March 4, 2013.

---

[2] Allodynia has been defined as "pain due to a stimulus that does not normally provoke pain." Yusi He; Peggy Y. Kim, *Allodynia*, National Center for Biotechnology Information, U.S. National Library of Medicine (June 24, 2020), https://www.ncbi.nlm.nih.gov/books/NBK537129/ (last visited 8/12/2020).

Nevertheless, Ringer states she is submitting the February 2013 determination as part of her new evidence submission.  Doc. 16, p. 5.

On June 25, 2015, Ringer received a rollator walker with walker seat from Boardman Medical Supply Co.  Tr. 509-510.  Although hard to read, according to Ringer, the physician name listed on the Boardman Medical Supply receipt is Dr. Frank Lazzerini, M.D., her treating physician in June 2015.  Tr. 22, 509, 620.

Per Ringer's hearing testimony, about a year prior to the May 24, 2018, ALJ hearing, she started receiving ketamine infusion treatments for her CRPS/RSDS from Dr. Hayek.  Tr. 79.

**C.     Evidence upon which Ringer seeks a sentence six remand**

As part of her appeal, Ringer argues that a sentence six remand is appropriate for consideration of the following records which she asserts were submitted to and rejected by the ALJ and Appeals Council:

- University Hospital pain management infusion records dated March 30, 2017, to September 13, 2018, and Dr. Salim Hayek, M.D., examination records dated March 8, 2017, and December 13, 2017;

- Evaluation and treatment records from Affinity Medical Center by Dr. Gamaliel Batalla, M.D., dated October 11, 2011;

- Aultman Hospital record dated June 13, 2011, to July 18, 2014; Omni Orthopedics records dated May 18, 2011; Aultman Hospital Pain Management records dated January 3, 2011, to May 23, 2011; Spectrum Orthopedics records dated January 20, 2008, to October 6, 2009; and Dr. Michael Maley records dated December 22, 2008, to December 12, 2011.

Doc. 16, pp. 1-2.

In connection with her request for a sentence six remand, Ringer also submits a copy of a Determination Explanation dated February 11, 2013, completed by an Ohio DDS physician Dr. Michael Delphia, M.D., wherein he found Ringer disabled because her RSD/CRPS satisfied Listing 1.02; and a copy of a June 25, 2015, receipt for a rollator walker that she states was prescribed by her treating physician.  Doc. 16, p. 2.

**D.      May 24, 2018, ALJ Hearing**

   **1.      Plaintiff's testimony**

Ringer was represented and testified at the hearing. Tr. 65-98.  Ringer lived with her grandparents.  Tr. 66.  The only stairs that Ringer has to use in the home are the two steps between the garage and home.  Tr. 91.  There is a railing and Ringer uses her good foot as best as she can and goes as slow as she has to down the two steps.  Tr. 91.  There are stairs going in to the basement but Ringer cannot even recall how long ago it was since she was in the basement. Tr. 91.

Ringer has a driver's license but drives only if it is "absolutely necessary."  Tr. 66.  When asked what "absolutely necessary" meant, Ringer explained that one time she had to drive about 15 minutes to pick up her grandparents after their vehicle had broken down.  Tr. 66-67.  Ringer's grandfather drives her to her medical appointments.  Tr. 67.

When Ringer was working in 2008, she was having a problem in her left foot.  Tr. 69-70. At first, the doctors thought it was a fracture and they had her wear a boot.  Tr. 70.  The doctors later determined that Ringer had a Morton's neuroma that had to be removed from her left foot. Tr. 69-70.  Her boss at the time was very understanding and she was able to take a six-month leave of absence.  Tr. 69-70.  After the surgery, her foot never really got better but she tried to return to work as a hostess.  Tr. 68, 70, 71.  However, being on her feet made things worse.  Tr.

72.  She would work maybe four days and then would have to call off work for four days.  Tr.

72.  Eventually, she was only scheduled for one day each week and then only picked up a shift

when she was able to.  Tr. 72-73.  Ringer stopped working in 2011.  Tr. 73; *see also* Tr. 526.

The pain was initially in her left foot and ankle but over a number of years it traveled to her knee

and hip.  Tr. 70-71.  She has had some injections in her back.  Tr. 70, 73.

Ringer described the pain as "[n]umbness, tingling, burning, electrical feeling, stabbing,

shooting."  Tr. 74.  She explained that even the slightest touch will cause her pain, e.g., the

slightest bit of wind or a blanket.  Tr. 74.

At the hearing, Ringer was using a wheeled walker and had her leg propped up on it.  Tr.

75, 79.  Ringer could not remember when she started using the wheeled walker but noted that,

before using the wheeled walker, she was using a walker that only had wheels in the front.  Tr.

75.  Ringer estimated that she started using a walker in 2011.  Tr. 76.  It was her great-

grandmother's walker.  Tr. 76.  She used that until she received Medicaid and was able to get the

wheeled walker.  Tr. 76.  Prior to using a walker, Ringer used a cane if she left her house but she

hardly left her house.  Tr. 75-76.  Ringer stated that she uses the wheeled walker all the time,

even in her house.  Tr. 76.  She explained that there are some days she cannot get out of bed and

she has to use a bed pan and have her grandparents help her.  Tr. 77.  Ringer feels like a burden

to her grandparents.  Tr. 83.  Ringer's grandmother assists her with her personal care.  Tr. 84-85,

86.  Ringer does not do any cooking or chores.  Tr. 86.   Her grandparents take care of the

grocery shopping.  Tr. 67.

Ringer explained that she has to keep her leg propped up because, if she let her foot

down, she would start to feel a burning sensation; she would not be able to talk; and would have

a lot of pain and would cry.  Tr. 80.  When Ringer is at home, she lies in bed and always has two

pillows under her foot at all times.  Tr. 80.  If Ringer is at a doctor's appointment, she props her leg up on her walker.  Tr. 80.

Ringer indicated that the only thing that helps her pain is when she receives a ketamine infusion.  Tr. 78.  The infusions help relieve her pain the day of the infusion and maybe for four days total but, once she gets home from a treatment, she sleeps all day and the following day because the treatments are so strong.  Tr. 78, 79, 95-97.  Ringer explained that on days that she does get relief from the infusions, she is at a pain level of a 6 or 7 as compared to an 8 to 10.  Tr. 97.  Ringer noted that her anxiety increases when she is scheduled to have an infusion treatment so she is given extra anxiety medication to help with the increase in her anxiety.  Tr. 78.  Ringer started receiving the infusions in 2017 and usually gets a treatment every two weeks, depending on scheduling issues.  Tr. 78-79.  Ringer is usually at her appointment for her infusion treatment from about 6:30 a.m. until 1:30 p.m.  Tr. 78, 95.

Before Ringer started having the problems with her foot and anxiety, she described herself as very social but she only has a few friends now because she cannot do the things that they want to do.  Tr. 85-86.  Ringer indicated that her friends do not really understand her condition because to them she looks okay.  Tr. 83.  She feels comfortable talking to her mental health provider about her condition because his sister-in-law has the same nerve condition as Ringer so Ringer does not feel like she has to get him to believe her.  Tr. 82-83.

### 2.    Vocational Expert

Due to an unexpected emergency, the Vocational Expert ("VE") scheduled to testify at the hearing did not appear at the hearing.  Tr. 21.  Accordingly, following the hearing, the ALJ submitted written vocational interrogatories to the VE.  Tr. 21. On June 15, 2018, the VE responded to the ALJ's interrogatories and his responses were proffered to Ringer's counsel for

comment.  Tr. 21, 612-616, 617-618.  On June 29, 2018, Ringer's counsel provided substantive

comments and legal arguments.  Tr. 21-22, 620-622.  The VE's responses were thereafter

admitted as Exhibit B24E (Tr. 612-616).  Tr. 22.

   The VE interrogatories listed Ringer's past work experience as hostess, SVP 6 (actual

SVP as performed), light per DOT[3] (medium as performed); and bakery clerk, SVP 3, light

(medium as performed).[4]  Tr. 613.

   The ALJ requested that the VE consider a hypothetical individual born in 1985, with at

least a high school education who is able to communicate in English, with the work experience

listed above, who has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)

except the individual cannot operate foot controls with the left lower extremity; can occasionally

balance, stoop, kneel, crouch, crawl and climb ramps and stairs; can never climb ladders, ropes,

and scaffolds; must avoid concentrated exposure to temperature extremes; should avoid exposure

to moving mechanical parts and unprotected heights; can perform unskilled to semiskilled tasks

in an environment free of fast-paced production requirements or high production quotas; can

have frequent interaction with others; requires frequent use of an assistive device (cane or

walker) for periods of standing and/or walking.  Tr. 614.  The VE indicated that the described

individual would be unable to perform Ringer's past work.  Tr. 614.  The VE indicated that,

assuming a cane was required, the described individual would be able to perform other jobs that

exist in the national economy, including food and beverage order clerk; charge account clerk;

---

[3] The Dictionary of Occupational Titles (DOT) is published by the Department of Labor.  *See* 20 CFR § 404.1566(d)(1).

[4] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling No. 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000).   "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  *Id.*

and document preparer.  Tr. 615.  If the individual required use of a walker, the VE indicated there would be no jobs available.  Tr. 615.  The VE added that "[t]he use of a cane will have nominal impact on unskilled sedentary job performance.  The use of a walker will preclude bilateral manual ability during standing and walking rendering sub-sedentary RFC and no jobs identified."  Tr. 615.

The VE indicated that an individual can be off-task 10% of an 8-hour workday in addition to regularly scheduled breaks and still remain competitively employable and an individual can be absent from work one day a month and still remain competitively employable. Tr. 616.

### 3. Request to leave record open for additional records

At the start of the hearing, Ringer's counsel informed the ALJ that Ringer and her counsel had been trying to get pain management records from Ringer's pain management physician, Dr. Hayek, but they had been unsuccessful.  Tr. 61-63.  Thus, Ringer's counsel requested that the record be held open to allow Ringer additional time to obtain and submit the pain management records.  Tr. 61-63.  The ALJ stated she would initially allow Ringer two weeks to submit the additional records but noted that the VE interrogatories would take longer so if additional time was needed to get the records that would be fine.  Tr. 63-64.

After the hearing, on June 9, 2018, counsel for Ringer sent a letter to the ALJ indicating that they had still not received the pain management records from Dr. Hayek.  Tr. 22, 610.  In that letter, Ringer's counsel asked that the ALJ leave the case record open until Ringer had submitted comments regarding post-hearing interrogatories to the VE.  Tr. 610.   On June 29, 2018, Ringer's counsel provided substantive comments and legal arguments following the ALJ's proffer of the VE's responses to the interrogatories.  Tr. 22, 620-622.   In that June 29, 2018,

correspondence, Ringer included a copy of a June 25, 2015, receipt from Boardman Medical Supply Co. for a rollator walker and walker seat.  Tr. 620.  There was no request that the record be left open any longer.  Tr. 22, 620-622.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[6] claimant is presumed disabled without further inquiry.

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

[6] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[7] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors

to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

 In her August 9, 2018, decision, the ALJ acknowledged the prior ALJ decision and

discussed the relevant Social Security Acquiescence Rulings pertaining to principles of

administrative res judicata, including AR 98-4(6) ("the *Drummond* AR") and AR 98-3(6) ("the

*Dennard* AR").[8]  Tr. 23-24.  Plaintiff challenges the ALJ's findings relative to her CRPS and the

---

considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[7] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[8] The Sixth Circuit has explained that:

 The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government.  At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings.

effects of her ketamine infusions but, she does not specifically challenge the ALJ's application of the *Drummond* and *Dennard* Acquiescence Rulings.  The ALJ made the following findings:[9]

1.  Ringer meets the insured status requirements through June 30, 2016.  Tr. 25.

2.  Ringer has not engaged in substantial gainful activity since March 20, 2015, the alleged onset date.  Tr. 26.

3.  Ringer has the following severe impairments: lumbago and neuritis or radiculitis of the thoracic and lumbar spine; complex regional pain syndrome ("CRPS"), alternatively diagnosed as reflex sympathetic dystrophy ("RSD") of the left foot and chronic pain syndrome; major depressive disorder; and panic disorder with agoraphobia.  Tr. 26.  Ringer had non-severe digestive/gastrointestinal and renal impairments.  Tr. 26-29.

4.  Ringer does not have an impairment or combination of impairments that meets or medically equals the severity of the Listings.  Tr. 29-34.

5.  Ringer has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she cannot operate foot controls with the left lower extremity, requires the frequent use of a cane for the required standing and/or walking of sedentary work, and is further limited in the following nonexertional respects: can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; must avoid concentrated exposure to temperature extremes, and must avoid all exposure to moving mechanical parts and unprotected heights; and can perform unskilled to semiskilled tasks in an environment free of fast-paced production requirements or high production requirements; and she can have frequent interaction with others. Tr. 34-48.

6.  Ringer is unable to perform any past relevant work.  Tr. 48-49.

7.  Ringer was born in 1985 and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  Tr. 49.

8.  Ringer has at least a high school education and is able to communicate in English.  Tr. 49.

---

*Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018) (emphasis in original).

[9] The ALJ's findings are summarized.

9.    Transferability of job skills is not material to the determination of disability.  Tr. 49.

10.   Considering Ringer's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Ringer can perform, including: food and beverage order clerk, charge-account clerk, and document preparer.  Tr. 49-51.

Based on the foregoing, the ALJ determined that Ringer had not been under a disability, as defined in the Social Security Act, from March 20, 2015, through the date of the decision.  Tr. 51.

## V. Plaintiff's Arguments

Ringer contends she is entitled to a sentence four remand, arguing that the Commissioner's decision is contrary to law and not supported by substantial evidence because the ALJ erred by finding that Ringer's rollator was not medically necessary and by not finding that Ringer's CRPS and ketamine infusion treatments caused her to be incapacitated for at least two days per month.  Doc. 16, pp. 7-8; Doc. 19, pp. 1-3.  Ringer also argues that she should be entitled to a sentence six remand for evaluation of evidence submitted to the Appeals Council. Doc. 16, pp. 6-7; Doc. 19, pp. 3-4.

## VI. Law & Analysis

### A.    Standard of review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## B.    Ringer has not shown that the ALJ's decision is contrary to law or not supported by substantial evidence

Ringer seeks a sentence four remand, arguing that the Commissioner's decision is contrary to law and not supported by substantial evidence because the ALJ erred by finding that her rollator was not medically necessary and by not finding that her CRPS and ketamine infusion treatments caused her to be incapacitated for at least two days per month.  Doc. 16, pp. 7-8; Doc. 19, pp. 1-3.

Ringer argues that the ALJ "played doctor" by finding that her rollator was not medically necessary, ignoring the fact that her treating physician prescribed her rollator.  She also contends that the ALJ's finding that Dr. Lazzerini's prescription for the rollator "could have been a mere accommodation[,]" was speculative and not supported by the evidence.  As explained below, while there is not an actual prescription in the record for a rollator, the ALJ appeared to accept Ringer's claim that the rollator was prescribed by Dr. Lazzerini since his name was on the June 25, 2015, rollator receipt.  Tr. 22.  However, the ALJ thoroughly explained the reasons why she

did not find that a prescription for a rollator, standing alone, did not establish that the rollator was "medically necessary" under all circumstances and/or that Ringer's use of a rollator established that she was disabled.  For example, the ALJ observed that there were no treatment records from Dr. Lazzerini.  Also, there were no records provided for the prior year of pain management treatment.

More particularly, when assessing whether Ringer's CRPS medically equaled a listing, the ALJ considered Ringer's reliance on her use of a rollator that Ringer states was prescribed by her physician but concluded that she was "not persuaded by the documented invoice for and receipt by the claimant for the rollator walker to the argued conclusion that this evidence supports an 'inability to ambulate effectively' that is equivalent to the severity criterion of Listing 1.02A."  Tr. 30.  In reaching this conclusion, the ALJ stated:

> In pre-hearing and earlier briefs, the claimant's attorney alleges that Ms. Ringer's CRPS of the left lower extremity equals (again, it cannot meet though argued as such) Listing 1.02A (Ex. B21E/3; see also, e.g., Ex. B8E).  In support of that, a June 25, 2015 invoice for a rollator walker with seat was produced into evidence after the hearing, which document lists as "doctor" Frank Lazzerini, M.D. (Ex. Bl1D/1).  Counsel cited to documented observations made by an examining physician and by the claimant's treating psychiatrist that she had presented with the rollator (or "wheeled") walker (Ex. B26E/2 citing, e.g., Ex. B1F/2; B2F/13,4; B13F/30,9,3).

> But there is no contextual support, by way of Dr. Lazzerini's physical examination around the time of prescribing this device in June 2015, that the device is medically necessary for supporting effective ambulation over a sufficient distance to be able to carry out activities of daily living.  For reasons that the claimant herself may have readily answered, Dr. Lazzerini's office treatment notes from March 2015 through early 2016 have not been produced in connection with her current disability applications (see Ex. B3E/5,7; B3E/8 [noting that his office "was shut down a couple of months ago" in apparent relation to a criminal investigation]).  Without Dr. Lazzerini's treatment notes, it could be the case that Dr. Lazzerini prescribed the walker as a mere accommodation for the claimant's subjective complaints, as opposed to clinical findings on examination that supported an extreme limitation of the ability to ambulate independent of such an assistive device.

Tr. 30.  In finding that Ringer's CRPS did not equal a listing, the ALJ also noted that:

The lack of any actual treatment notes from primary care or pain-management physicians in the current time-frame, coupled with the claimant's attorney's continual denials of the agency's requests for permission to send the claimant to a consultative physical examination, prevent a finding that this record contains "new and material" evidence for worsening limiting effects of CRPS to the extent of listing-equivalent severity, or inability to ambulate effectively that is supported by objective medical evidence.

Tr. 30.

Also, when assessing Ringer's RFC and the extent to which Ringer's CRPS caused functional limitations, the ALJ observed that:

[A]lthough counsel correctly represents that SSR 03-2p does recognize that "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved," SSR 03-2p confirms that claims in which CRPS/RSDS is a severe medically determinable impairment still require consideration of relevant objective medical evidence, including expressly medical signs from physical examinations, over a longitudinal clinical record (Ex. B21E/4). As stated above, such longitudinal treatment with a pain management specialist, or other physician, remains absent from the evidence.

Thus, the undersigned must reject counsel's position that "it is of no significance to this claim that Ms. Ringer does not have the designated signs of RSDS/CRPS every time she sees a doctor," because the great majority of times over 2016-2018 when she has been seeing treating physicians for other medical concerns fail to document any clinical indicators for serious, if not total as alleged, loss of function of the left lower extremity due to CRPS-related pain. Beyond Dr. Scheatzle's[10] one-time FCE from August 2015, counsel's written arguments in support of these applications does not cite to any other physical examinations since the time of the prior ALJ's decision in support of the alleged disabling effects of pain associated with CRPS (Ex. B8E, B11E, B21E).

***

As stated above, Dr. Frank Lazzerini's June 2015 (or subsequent) office treatment note was not produced as evidence in the current claims, which prevents a consideration as to what medical signs and/or physical functional difficulties observed by him supported the prescription for the walker (if any). As such, th[e] fact that Dr. Lazzerini prescribed the walker in June 2015 is unpersuasive to it being "medically necessary" to support standing, walking, and/or balancing, as it could have been a mere accommodation based on the claimant's subjective request for such a device after being denied disability.

---

[10] Ringer does not rely on the one-time FCE to support her arguments in this appeal.

Tr. 38-39.

And, the ALJ further found that:

[I]in addition to the lack of evidence from the prescribing medical source (Dr. Lazzerini), there is no medical documentation establishing the medical requirement for the walker or describing the circumstances for which it is needed-i.e., whether all the time as alleged, periodically, or in certain situations (SSR 96-9p). Based on these factors in combined consideration with the lack of any longitudinal medical treatment record for CRPS-related pain over 2015-2018 and with the following discussion about other medical factors relevant to this case, the undersigned finds too much conflicting evidence and otherwise insufficient "new and material" medical evidence to support the alleged use of a rollator walker as "medically necessary" to support occasional standing and/or walking in sedentary work (or occasional balancing) since the date of the prior ALJ's decision. Thus, the undersigned adopts the prior ALJ's finding that the claimant remains with the residual functional capacity to stand and/or walk for the two total hours of sedentary work so long as being allowed to frequently use a cane.

Tr. 40.

The "claimant bears the ultimate burden of establishing the existence of a disability." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (claimant carries burden of establishing disability) (citing 20 C.F.R. § 404.1512(a)); *Walters*, 127 F.3d at 529 (claimant has the burden of proof at Steps One through Four).

While the record documents Ringer's use of a rollator since she received it in June 2015, as the ALJ's decision makes clear, Ringer failed to provide evidence to establish the basis upon which her physician felt that a rollator was required and/or under what circumstances the rollator was needed. Her own subjective statements as to the conditions under which she needs to use the rollator are not a substitute for evidence from her physicians as to the medical need for the rollator. While Ringer attempts to paint a picture of the ALJ "playing doctor" and making speculative findings, the reality is that Ringer failed to provide records from her own treating physicians to establish under what circumstances the rollator was medically necessary. Further,

18

she has failed to demonstrate that the ALJ failed to consider evidence and/or that the ALJ's findings are unsupported by the record.  Accordingly, the undersigned finds that the ALJ did not err in her findings relative to the rollator.

Similarly, Ringer's claim that the ALJ erred by not finding that her CRPS and ketamine infusion treatments caused her to be incapacitated for at least two days per month is without merit.  Ringer relies upon her subjective statements to demonstrate that the effects of her ketamine treatments cause her to be incapacitated at least two days per month.  Doc. 16, p. 8. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Jones*, 336 F.3d at 476.  Having considered Ringer's subjective complaints, the ALJ did not find her statements entirely consistent with the medical and other evidence in the record.  Tr. 35, 41-42.

Ringer also contends that the ALJ did not cite evidence to prove that she is not incapacitated from the effects of her ketamine treatments for at least two days per month.  Doc. 16, p. 8.  However, as discussed above, it is the *claimant's* burden to establish her disability.  *See Cotton*, 2 F.3d at 695.  When arguing that the evidence shows a worsening of her CRPS since the prior ALJ's decision, Ringer points to records outside the relevant period, e.g., a February 2013 disability determination that Ringer acknowledges was later reviewed by Quality Control and reversed and treatment records from 2008 and 2011.  Doc. 16, pp. 2, 4-5, 6.  However, the relevant period at issue is March 20, 2015, through the date of the ALJ's August 9, 2018, decision.  To the extent that she relies on records during the relevant period that were submitted only to the Appeals Council, e.g., pain management records, the court's substantial evidence review is limited to the evidence presented to the ALJ since the Appeals Council denied

review.[11]  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  As the ALJ stated, "[c]ounsel's argument about devastating, incapacitating side effects for several days after each Ketamine infusion is necessarily without direct evidentiary support since he never submitted Dr. Hayek's records[.]" Tr. 41-42.  The ALJ also noted that medical records from other medical providers which include discussion of Ringer's ketamine infusions do not reflect incapacitating side effects as alleged by Ringer.  Tr. 42.

Ringer has failed to demonstrate that the ALJ failed to consider evidence relating to the alleged limiting effects caused by her ketamine infusions and/or that the ALJ's findings are unsupported by the record.  Accordingly, the undersigned finds that the ALJ did not err by finding that her CRPS had not worsened such that a more restrictive RFC than that found by the prior RFC was required.

## C.    Ringer has not shown that a sentence six remand is warranted

Ringer argues that she is entitled to a sentence six remand because evidence she presented to the Appeals Council is material to her claim and therefore should have been considered by the Appeals Council.  Doc. 16, pp. 2-3, 6; Doc. 19, p. 3.  The following records are the evidence which Ringer asserts is "material" and was presented to the Appeals Council (and described at Tr. 2).  Doc. 16, p. 6.

- University Hospital pain management infusion records dated March 30, 2017, to September 13, 2018, and Dr. Salim Hayek, M.D., examination records dated March 8, 2017, and December 13, 2017;

- Evaluation and treatment records from Affinity Medical Center by Dr. Gamaliel Battala, M.D., dated October 11, 2011;

---

[11] The question whether Ringer is entitled to a sentence six remand based on the records submitted to the Appeals Council is addressed below.

- Aultman Hospital records dated June 13, 2011, to July 18, 2014; Omni Orthopedics records dated May 18, 2011; Aultman Hospital Pain Management records dated January 3, 2011, to May 23, 2011; Spectrum Orthopedics records dated January 20, 2008, to October 6, 2009; and Dr. Michael Maley records dated December 22, 2008, to December 12, 2011.

Doc. 16, pp. 1-2.  In connection with her request for a sentence six remand, Ringer also submits a copy of a Determination Explanation dated February 11, 2013, completed by an Ohio DDS physician Dr. Michael Delphia, M.D., wherein he found Ringer disabled because her RSD/CRPS satisfied Listing 1.02; and a copy of a June 25, 2015, receipt for a rollator walker that she states was prescribed by her treating physician.  Doc. 16, p. 2.

A court "is charged with reviewing the decision of the ALJ, and not the denial of review by the Appeals Council, because when the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner."  *Osburn v. Apfel,* No. 98-1784, 1999 WL 503528, at *4 (6th Cir. July 9, 1999) (citing *Casey v. Secretary of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993)).  Thus, since the Appeals Council denied review in this case (Tr. 1), this Court is charged with reviewing the ALJ's decision, not the Appeals Council action. Accordingly, any claim by Ringer that this Court should reverse the Commissioner's decision because the Appeals Council erred in finding the evidence Ringer submitted was not "material" is futile.

Furthermore, the statute permits only two types of remand: a sentence four remand made in connection with a judgment affirming, modifying, or reversing the commissioner's decision; and a sentence six remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *See, e.g., Hollon v. Commissioner*, 447 F.3d 477, 486 (6th Cir.

2006).  A court cannot consider evidence that was not submitted to the ALJ in the sentence four

context; it can consider such evidence only in determining whether a sentence six remand is

appropriate.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279

F.3d 348, 357 (6th Cir. 2001)

The plaintiff has the burden under sentence six of 42 U.S.C. §405(g) to demonstrate that

the evidence she now presents in support of a remand is "new" and "material," and that there was

"good cause" for her failure to present this evidence in the prior proceedings.  *See Hollon*, 447

F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010) (although the

material that the claimant sought to introduce was "new," the claimant failed to meet her burden

of showing "good cause" for failure to submit materials and that the evidence was "material.").

Evidence is "*new* only if it was not in existence or available to the claimant at the time of the

administrative proceeding."  *Ferguson*, 628 F.3d at 276 (internal quotations and citations omitted

and emphasis supplied).  "[E]vidence is *material* only if there is a reasonable probability that the

Secretary would have reached a different disposition of the disability claim if presented with the

new evidence."  *Id.*  (internal quotations and citations omitted and emphasis supplied).  "A

claimant shows *good cause* by demonstrating a reasonable justification for the failure to acquire

and present the evidence for inclusion in the hearing before the ALJ."  *Id.*  (internal quotations

and citations omitted and emphasis supplied).

The only element that Ringer mentions when seeking a sentence six remand is whether

the evidence is "material."  Doc. 16, p. 6; Doc. 19, p. 3.  She does not argue that the records are

"new" and, in fact, many of the records pre-date the alleged onset date and/or ALJ hearing and

decision rendered in connection with her 2016 application.  For example, Ringer attempts to

submit for this Court's consideration a Determination Explanation dated February 11, 2013,

completed by Ohio DDS physician Dr. Michael Delphia, M.D., wherein he found Ringer

disabled because her RSD/CRPS satisfied Listing 1.02.  Doc. 16, pp. 2, 4-5.  However, this

record relates to her previously denied 2012 application.  Doc. 16-3, p. 1.  And, Ringer

acknowledges that this determination was later reversed following a Quality Control Review.

Doc. 16, p. 5.  Also, at least one of the records upon which Ringer seeks a sentence six remand –

the June 25, 2015, rollator receipt – is clearly not new because the ALJ considered that record.

Moreover, Ringer has made no attempt to demonstrate "good cause" for her failure to

submit records that were in existence prior to the ALJ's August 9, 2018, decision.  Ringer

requested and received additional time to submit Dr. Hayek's pain management records but

never submitted those records to the ALJ.  As the ALJ explained in her decision:

> As of the date of this decision that is over one month after counsel's post-hearing
> memorandum, the identified pain-management records have not been produced.
> Ample time was allowed for the claimant's attorney to request, receive, and submit
> that evidence within a reasonable time after the hearing.  While it is understandable
> that a particular medical source might be the cause of delays in complying with the
> requests and follow-up contacts made by counsel's office, the undersigned has not
> received any additional written requests from Mr. Alfera seeking yet further
> extensions of the hearing.  No documentation of his attempts to obtain this evidence
> has been provided.
>
> Given the passage of two months after the hearing with no additional extensions
> requested, or granted, the undersigned has not submitted the evidence and has not
> made any effort at showing that good cause warrants even more time be allowed
> for submitting these records.  Therefore, notwithstanding the lack of likely existing
> pain-management treatment notes, the undersigned  has closed the hearing in this
> matter and issues this decision on the basis of the medical and other documentary
> evidence that was formally admitted during the hearing, the testimony from the
> claimant, all written and oral arguments made on her behalf by her attorney, the
> post-hearing evidence of written vocational interrogatories, and the receipt for the
> rollator walker.

Tr. 22.

Thus, even assuming arguendo that Ringer could demonstrate that records submitted to

the Appeals Council constitute "new" and "material" evidence, her request for a sentence six

remand fails because she has failed to demonstrate "good cause" for not presenting the evidence to the ALJ.  Also, to the extent that Ringer claims that records dated after the May 2018 hearing or August 2018 decision demonstrate a worsening of her condition, a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).  If Ringer's condition seriously worsened after the administrative hearing, an appropriate remedy would be the initiation of a new claim for benefits as of the date that her condition rose to the level of a disabling impairment.  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

Considering the foregoing, the Court finds that Ringer has failed to meet her burden of showing a basis for a sentence six remand.

### VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.

Dated: August 12, 2020                     */s/ Kathleen B. Burke*
                                          Kathleen B. Burke
                                          United States Magistrate Judge